morning mr. Murphy good morning your honor may it please the court I'm William Murphy I represent the appellants in five consolidated appeals each of the appeals involves the dismissal on statute of limitations grounds of class-action complaints that were filed by five different sets of plaintiffs against five different banks it's our fundamental position in the in the earlier case on it I'm sorry your honor were you to counsel in the earlier case I was not the trial counsel in any of these cases your honor so I'm I was not counsel of record in the district court in any of the proceedings I plead guilty your honor our basic position in this case is that the district court fundamentally at least implicitly found facts in in it in deciding that the plaintiffs did not meet the equitable tolling standard and that that was inappropriate at the motion to dismiss standard that's the heart of your case is that we ought to at least have this should at least go to some judgment stage not 26 that's correct your honor at least a summary judgment I think that given them what the plaintiffs have alleged in their complaint it's unlikely that any of them would be found to have not come within the equitable tolling doctrine even on summary judgment but certainly that the case should not have been dismissed at the outset this you know is the same judge in both cases there early case like he would have a good feeling about how this case ought to go in whether or not this was equitably told well I think that judge Bennett did find in the Fangman case that the plaintiffs in that case met the equitable tolling standard after a summary judgment motions were filed and he found that a class should be certified even though there were arguably some differences among various members of the class well when he had that thing with case there had been no newspaper articles there's no lesson on this in fact the Fangman case itself wasn't even there this is different he says because it says it doesn't get the same lawyers and I don't quite get that point maybe you address that I don't know if I followed the duty of the order that duty being put on the lawyers to know as opposed to the clients but well he did look at it as though it was in a different posture from the first case he did and he based that on primarily I think the fact two facts one is that the lawyers who are involved in the Fangman case had at some point obtained access to a large database from genuine title and the database included the names of borrowers and the names of banks but what it really didn't include was a genuine title had paid kickbacks to the banks and certainly you would not file a complaint immediately just because you know that genuine title had had a practice of paying kickbacks to certain banks and in the case of you know the the federal authority the Consumer Finance Protection Bureau and the state authority Maryland had sued but they had they had sued Wells Fargo Bank and JP Morgan Chase for this scheme whereby genuine title had paid those banks kickbacks in order to get title services for their loans but that nothing in those complaints filed by the CFPB in the state nothing in the newspaper articles said oh and by the way Bank of America was also included in this and Eagle Bank was included in this and acre financial was included in this those banks were not mentioned weren't they included initially in those earlier filings Eagle and B of A were included in the first Fangman case but the the claims were dismissed at an early stage in both instances in Bank of America's case it was because the loan officer that the plaintiffs thought had been with Bank of America at the time was not so there that that loan officer was with some different bank and so Bank of America got out of the case on that basis and Eagle the situation was that in Fangman originally they just sued genuine title the plaintiffs amended their complaint to sue a number of the banks later but they had to concede that the time period that elapsed between the initial complaint and the amended complaint was too long for the case against Eagle to proceed because Fangman the plaintiff in Fangman was an Eagle borrower and so that on that situation they were dismissed but that has nothing to do with all the other people who are out there in the world all the other homeowners that had loans from Eagle Bank they knew nothing about the Fangman case they weren't alerted to it and Judge Bennett seemed to have an idea that somehow there was enough information in the atmosphere that a claim against Bank of America or First Mariner Bank would be different if the Fangman case had gone to trial or whatever and a published opinion came out in the regular books and you know it would be different? This was not these cases and the claims were not front page news your honor this was not Enron where someone is a you know an investor in Enron. Is that required for notice to get front page news? I mean a lot of things are not front page news. In fact the notices I see for estates I don't know how in the world you ever know that stuff. Claims buried down in some small print down there the law says you need notice now. Admittedly this is different. This is different. But you don't need front page news to make it notice. I think for if you're not going to talk to the plaintiff about what the plaintiff actually knew which Judge Bennett didn't do on a 12b6 standard. Here are plaintiffs who say we knew nothing about this. They allege that in their complaint. They alleged in great fulsome detail why they didn't know anything about it. So did we get a base from Judge Bennett's first ruling on the Fingham case that they did not know at least it was basically they don't know so now you have to move it forward from that time on to say okay you didn't know. Is that the base we use there? Well I think you have to ask yourself if the plaintiff alleges that he didn't know what kind of facts are out there in the public record that would give rise to a finding of fact that the plaintiff should have known. And I asked myself I have I have had financings and refinancings maybe a dozen times in my life. Be careful because they're asking you to ask the lawyers in this case. See the lawyers they're saying the lawyers knew. The lawyers have been trying these cases. So now if I'm going to ask myself as a lawyer are we going to do that here? Well no because these lawyers did not represent that group of plaintiffs. The plaintiffs that are now involved they did not represent them at that time. They had no relationship whatsoever with the individual homeowners. And what the point I'm trying to make your honor is that individual homeowner if I had heard that there was a kickback scheme involving genuine title and it involved JP Morgan Chase and I had a loan with Bank of America. With genuine title? Well would I know that? That's the question. Would I know that? And at the settlement don't they put the title company up there and don't you pay the settlement company? You pay something. You pay that title. And there's probably a line on your settlement sheet if you go back and look. Comes out of your pocket. You go back and look to see if you had genuine title. But standing here today I don't know who my title company was. I didn't I thought that what Judge Bennett found was that by mid 2015 the plaintiffs should have checked to see who their. Well if they had checked your honor and they looked at their settlement sheet and they saw that genuine title was their title agency. Would they know that there was a kickback paid by genuine title to it to their bank? No. Because there's nothing on that HUD 1 disclosure sheet that identifies the kickback. Okay. That's part of the fraud. All right so this is I'm this is helpful to me and I'm trying to sort of get a handle on exactly what your position is. So the district court finds that by mid 2015 given the litigation the enforcement actions and the publicity the plaintiffs could have learned of their claims. If that were right you would agree that equitable tolling doesn't apply? Are you contesting that sort of the district courts legal analysis or the factual? The legal even if that were right even if the plaintiffs could have learned of their claims by mid 2015 still equitable tolling should apply? Yes because at the complaint stage because the plaintiffs in this case alleged that they did not know and they did not have the ability to know or to learn that genuine title had paid kickbacks to their lenders. So you're saying there was no way for them to know that. So you're saying the district court had to have weighed the district court and in my view Judge Bennett did weigh evidence here. He took it he took judicial notice which we think was improper of the amount of press coverage and actually the press coverage if you look at it you look at the whole list of articles you don't see any of these banks named in any of them. He can't take judicial notice at that point. I'm sorry your honor. The judge can take judicial notice at a 12 v 6 stage. Is that correct? Depending on what he does it what the purpose is. If the purpose is to determine what these plaintiffs knew or should have known the answer is no. You have to ask the plaintiff to find out you know did you read the Baltimore Sun and the plaintiff may say I don't read the newspaper. Did you read the you know they're they included articles here from Investor Business Daily from the Financial Times of London. The average homeowner does not read that material. You're saying the court made a lot of assumptions then. Absolutely and really they became implicit findings of fact that there was enough information out there for these plaintiffs contrary to what they alleged in their complaint that there was enough information out there that they knew or should have known about their claims. Now he found that they didn't know. Judge Bennett said well I accept as a given what's said in the complaints that these plaintiffs did not know anything about this fraud until they were alerted to it by the lawyers. So he accepted that but he nonetheless found that this was not an extraordinary circumstance because somehow they could have found out something from somebody. That's just not an appropriate analysis for a judge to undertake on a 12 v 6 motion. Can I ask you a question about the statute of limitations under RESPA. I do I find this case very confusing and so the statute of limitations it's an unusual one because it's not pegged to the date of discovery. Right it seems like it's a hard and fast one year after you take out your loan that's how much time you've got. So Congress didn't seem to be could have known about their claim. It's not pegged to when you knew or should have known you had a problem. It's just one day after you take out your loan. So why are we asking all these questions about who knew what when? Well your honor because generally speaking federal statutes of limitations do not adopt the discovery rule generally. They usually tie the complaint to some event that occurs. Yeah there's a lot of them that tie to discovery and in fact just in looking back at our cases on fraudulent concealment they all seem to be statutes of limitations. Fraudulent concealment is an equitable tolling doctrine and it's different and it applies to every federal statute of limitations. The Supreme Court has made that clear since the Holmberg decision back in the 20s and reaffirmed recently that the doctrine of equitable tolling applies to every federal statute of limitations and Congress has presumed they've known that. Unless it's jurisdictional. Do we have to consider that question here? I don't think so your honor. It's not a jurisdictional statute of limitations. It's never been held to be in any published opinion by this court. There was an unpublished opinion 30 years ago. It's an unpublished opinion. I don't know why the other side cited it since it's an unpublished opinion and it's never been followed. It's not been followed by any district court in the Fourth Circuit and it's been rejected. That notion has been rejected by every court of appeals to have decided it. There was an early DC Circuit case back in the early 80s. That's been discarded in the DC Circuit. This is not a jurisdictional statute of limitations because Congress didn't say explicitly that it is which Congress has to do in order to get from out from under the Holmberg doctrine which says that all statutes of limitations in federal law are subject to equitable tolling and the reason is pretty clear. Congress does not want people to be defrauded and then to find out after the statute of limitations has expired that they had a claim they never knew about. So then you would think Congress would have put in this statute of limitations like it did in all those others, you have one year to sue after you knew or should have known of your claim. If Congress had wanted to create a fixed cutoff, they could have enacted a statute of repose. Actually I'm not trying, just to be clear, cards on the table, I'm not trying to say equitable tolling doesn't apply. I'm trying to figure out how we apply equitable tolling to a statute of limitations. Asking all of these questions about when were people on sort of inquiry notice and what could they have found out if they had looked, it just seems like it kind of runs you into maybe a congressional intent to have a different kind of statute of limitations. Congress intended that people get disclosure about what was going on in the real estate settlement. That is the primary intent of Congress in passing this statute. One intent was to do away with kickbacks which the banks and Genuine Title flaunted in this case because they engaged in kickbacks in violation of federal law. The second thing though is Congress wanted people to have disclosure about what was going on in their settlement. If the banks wanted to avoid a situation where the statute of limitations is not tolled, the banks should have informed people, oh by the way, we are referring you, I'm sorry. Let me ask you a question regarding the cases here and the way Judge Bennett analyzed this. Between the first case and this other case, he came back and he looked at the Supreme Court case in Menominee. Yes. Menominee basically, you know what it basically, you have to have someone to stand in the way. And the question is, at least it comes to my mind, Judge Bennett applied that basis, but we've got our own case here, the supermarket case. So to what extent did Menominee abrogate our supermarket case? It does not at all, Your Honor. I don't think. Why not? Because Menominee, first of all, wasn't dealing with fraudulent conveyance. Menominee was dealing with an fraudulent concealment, I'm sorry. And the supermarket case is a fraudulent concealment case. And fraudulent concealment is one aspect of the kinds of extraordinary circumstances that might give rise to equitable tolling. There are other forms, and the class action doctrine is one. A situation where the plaintiff files in the wrong court and then it gets dismissed, but he can refile because he made a jurisdictional mistake is another. There are situations where the courthouse was closed due to a snowstorm, and I was about to file my complaint and I couldn't. That might be an extraordinary circumstance outside the plaintiff's control that would give rise to equitable tolling. But so fraudulent conveyance is one form of that extraordinary circumstance. But where fraudulent concealment is involved, usually the answer is, if there's a fraud that's been filed, the litigation stops and does not start again until the plaintiff has been placed on at least inquiry notice. And if he is on inquiry notice, he had to have been able to find out enough information to learn about his cause of action. I think in the SD3 case that this court decided, Judge, when you wrote a concurring opinion, that analysis was employed, and it was employed correctly, because one concern is that you don't want plaintiffs to file suits based on hunches. I think maybe because genuine title was involved, maybe in my bank they were involved with a fraud too. I'll file a lawsuit just to be safe. You don't want to have that situation. The plaintiff has to have enough information to know that he has a cause of action. In this case... Does it require that the plaintiff do something in every case? No, it doesn't. In Supermarket of Marlton, the court said if the fraud, the fraudulent concealment is enough so that the plaintiff is totally unaware that anything's happened to him, then the plaintiff doesn't have to do anything. You only have to do something if you know you've been injured. In this case, the homeowners don't even know they've been injured. Or actual notice. Or actual notice, yes. I thought the supermarket case said you have to do something once you're on inquiry notice. You don't actually have to know you have a claim. You just have to know this deserves some looking into. There has to be some red flag that says, ooh, I might have a problem here. And you don't think that the publicity around this scheme even put the plaintiffs on trial. If any of them had read anything about it, then maybe yes. But the plaintiffs all alleged, and their complaints should be taken as stated, that they knew nothing, they read nothing, they had no awareness of a kickback having been part of their settlement until they got a letter from a lawyer. But I thought there are allegations that that went to whether they had actual notice that they had a claim, that they had been victimized, not to, but you're saying they actually allege, I literally read nothing about any of this. They actually allege that there was no way for them to have known the facts. But that's different. Did they allege that they were not, obviously they wouldn't have used these words on inquiry notice. Did they allege, I have never heard anything about the Fangman case. I've never heard anything about the AG's action. I have never heard any suggestion that GT was up to something bad. There's no specific allegation like that in the complaint that says, I'm not aware of all these press releases. If that were, I don't think it's required in the complaint. And if it were required, I think they should have been allowed to amend to say, oh, and by the way, I wasn't aware of Fangman or these other actions either. But that should not be a basis to dismiss with prejudice. I see that my time has expired. I'd like to reserve a few minutes. Morning, Your Honor. May it please the court. My name is Ryan Becker, a Fox Roth child, and I'm attorneys on behalf of the ESSA, Appalese. But I'll be arguing the statute of limitations on behalf of all the Appalese today. We did reserve five minutes of our time so that my colleague, Mr. Schmalzbach, can argue some of the Bank of America specific points. The district court's decision requires affirmance for three different reasons. First, equitable tolling requires extraordinary circumstances, and extraordinary circumstances do not exist here. And that is because? Because the extraordinary circumstances test focuses not on what plaintiffs actually knew. And what Mr. Murphy wants to make this case is about who knew what when. But that goes to Judge Harris's concern about the discovery rule and how that plays into it. What the Supreme Court says in Menominee is that the extraordinary circumstances focuses not on what anybody actually knew, but what was discoverable. And that's what district... So does that go against our supermarket case? Fraudulent concealment is not separate and apart from equitable tolling. Menominee comes in and says, this is what you need to do. There's two elements to meet equitable tolling. Fraudulent concealment is one way to do that, but it doesn't mean that you still don't have to follow extraordinary circumstances and reasonable diligence. So now I think the fraudulent concealment test in Supermarket or Marlington is maybe a necessary but not sufficient way to meet the extraordinary circumstances test. So you're saying it's not good law insofar as that particular point? If you're saying the only thing you have to do is follow that, yeah, I think Menominee changes that law. I do your heart. Because the extraordinary... And so what in this case... And Judge Bennett properly focused on what could have been discovered. And in this case, an awful lot could have been discovered. You know, you had cases going all the way back to 2012 detailing genuine titles alleged scheme. You had the Fangman case, multiple amended complaints in Fangman. You had two separate enforcement actions by the CFPB and the Maryland Attorney General's Office. Did any of those mention these particular banks? Fangman mentioned a number of the banks. Sure, Bank of America was a defendant in Fangman. So was Eagle National Bank. They were dismissed very early in the action. Wouldn't that be an indication there's nothing there to be concerned about? I mean, someone's looking at you, you see your bank is up there and then they're dismissed. I've seen indications they're not a part of this kind of thing. But as your Honor, you mentioned the of these actions, both in Fangman and in the enforcement actions and in the press releases and the publicity that was attended to them, was genuine title. Genuine title was common to all of these cases and genuine title was a settlement agent for all of these cases. And genuine title was... Yes, Your Honor. No, I'm sorry. Yeah, but what pieces is there for assuming that these people read the newspaper or watch television? People get their information so many different ways. Families don't just sit down and watch the news at 630. I know, Your Honor. I'm not home by 630. It's totally different. Understood. And so it seems to me what the court was doing or possibly doing was saying, well, they should have read this in the paper. They should have. I mean, anybody who's a reasonably informed person should have read this. How could they not have known? It seems to me totally speculative. And as Mr. Murphy is saying, going against the complaint and not crediting the allegations of the complaint with any contrary information but supposition that necessarily any sentient being would have known about this. When there's... we don't know how these people get their information. We have no idea. Again, Your Honor, I think that the question you're asking is sort of about subjective knowledge. What did they actually know? And what Judge Bennett did in taking... Or what should they have known? Let's say that every newspaper in Baltimore had this information out there somewhere in its front page... a section. How is... is that automatically inquiry notice? Is that what you're saying? I think that there are cases that we say in our brief that say that is enough of inquiry notice. So if they never got past page five or six of the front page section, that that's in this case it is. And there's a difference between actual notice and inquiry notice. And what Mr. Murphy seems to be asking about is actual notice, saying unless our people knew exactly what was going on, they don't have to do that. But that they were put on notice that these things were going on. Well, if something's buried in the first section of the paper and it's not above the fold, who's to say? I mean, you're saying that's enough? If it's in the newspaper when probably 50% of people don't even read the newspaper today, at least in its in its classic... classic form, how is... how do you go about imposing this finding of due diligence at the pleading stage? Why isn't this appropriate to let the parties develop the evidence in the case, find out how much was really out there, give the plaintiffs the opportunity to show, well, really there wasn't a lot out there. There was a little article, you know, below the fold on page 20, and that's not inquiry notice. Why... why not let the evidence develop? I think the way Judge Bennett analyzed this is... and Mr. Murphy said it's important when you're looking at judicial notice, what was it used for? Judge Bennett didn't resolve factual disputes. There's no dispute that all of this information was out there. The borrowers don't dispute that there were all defendants' cases. Well, do we know where? We do, Your Honor. Yeah, yeah, there was... it was in the AP, CNN, Washington Post, Baltimore Sun. But do we... but do we know if they appear... when they appeared, where they appeared? In other words, where in the newspaper did they appear? Did they appear, as again, as I said, below the fold on an inside page? Did they appear on the front page? We don't know that, do we? No, we don't know exactly where they did. We know, for that's one of the sources... Right, but we don't know if it appeared on a Saturday afternoon... Correct, Your Honor. ...when the Orioles were playing... Right. ...as opposed to, you know, when nothing was going on in Baltimore. Sure, I understand that, Your Honor. But again, what... what people actually knew, maybe that has some implication on the diligence side. And we still submit that that's enough for inquiry notice, given all the information that was in this case. But... but Judge Bennett's point was that because all this information was out there, it was discoverable. It doesn't matter if these actual individual borrowers discovered it. But when you're talking about extraordinary circumstances, extraordinary circumstances say there has to have been something that the defendants were doing that actively misled plaintiffs, or that prevented them from being able to find what was happening. It was impossible for them to know. They didn't put it on the good-faith estimate. The good-faith statement... didn't the good-faith statement that was... requires the loan originator to state all charges that all loan originators involved in this transaction will receive? And it did not appear on that. Well, yes, Your Honor. I think what's... what's required, and we address this in our brief, what's required is that they say who the payments are going to. The general title got the payments here. There's no question about that. That's what was listed on the settlement sheet. So, but again... but the point about extraordinary... Didn't they have to state the amount of the charges? They did, and it did. And did they include the kickbacks in the amount? No, no. The kickbacks were not included on the HUD-1 or the HUD-2. But again, going to the point of what extraordinary circumstances is really about, it's that how were the plaintiffs misled? How were they prevented from being able to find out what was going on? You can't say that's the case here. Going back all the way to 2012, there was a case about genuine title. Fangman was in 13. It was amended in 15. You know, you've got an awful lot of information out there and... and that people are able to discover and file their claims. And the court is writing the statute of limitations out of RESPA. And the Cunningham case dealt with this similar... it was a Third Circuit case. It dealt with a similar lawyerly intervention argument that was made. And the Cunningham case says, you can't do that. You can't have a lawyer sitting around waiting to find the right plaintiff to bring a lawsuit because that nullifies statute of limitations. The dude is not a lawyer. No, no, your honor. The dude is being inscribed to the particular plaintiff. That's the difference there. Judge Penning attributed some of the knowledge of the lawyers. Said, hey, and I guess he was. He kept seeing these lawyers come back to these cases. They were going out and finding these people. He said, you knew this back then. That doesn't matter with regard to the clients that have come in. Whether the lawyers knew it, it's only when the lawyers inform the clients or they have some other means. And now, I think it's critical to this case to... to determine whether... to what extent the supermarket is still good law. Because I don't see the... I don't see the two cases as being in conflict with one another. And the inquiry is much deeper than the external look of who... were you doing something to stop them? It's also diligence on the part of the plaintiff in the case here. So, but the bottom line here is, everything you say sounds reasonable, but the question here is, is this prematurely being decided? And I think the answer... This is not something that should go back and allow these facts to come out. We're arguing back and forth over whether they had notice of this, where the newspapers... You've got these newspaper articles. I don't think any of them mention Eagle Bank, do they? The newspaper articles themselves, I don't believe so. But the fact... I'm going to say, you have a loan with Eagle Bank, and there's a pseudo against another bank. Oh, you should now make inquiry with your bank. Who does that? But they all say genuine title, Your Honor. They all say genuine title. And the CFPB enforcement actions, to give you an Eagle specific example, the individual mortgage broker that was Miss Edmondson's mortgage broker was named specifically in the CFPB action, and the press release that came with it. So her... put aside the bank, the individual person that she dealt with, that name was out there. To make that leap, you've got to accept that every bank that dealt with genuine title would engage in this kind of conduct. I don't think we want to make that kind of leap and say, well, because genuine title was done with this bank, you must have been doing it with my bank too. I don't think that follows. I mean... But it follows specifically with respect to Edmondson. Eagle Bank, is that a community bank or a small bank? Well, it's been a bank that's been acquired by a larger bank now. But was it a small bank kind of community? Yeah, it was not a huge... It wasn't like Bank of America, that's for sure. It just... I mean, it just seems the reason that, you know, when you get into small banks like that, I don't know, they don't like to take those kind of risks like the big boys. When you get involved in it, I'm not sure they want to get into kickbacks and things like that. They don't have that kind of repertoise to do it. So, I mean, I got Eagle Bank. I know the banker down here, good buddies and everybody. We go to church together. We're all kind of good friends. I don't think my bank's involved with this stuff. What gives me notice, because I see a big old title company going to another bank over here doing something illicit, that is my bank too. Because you know, you know, the title company is what holds it together, genuine title that holds it together. You know what you're closing, who your title services company are. It's on the papers, the payments going to the title service company is all there. And I think there's a difference between... So we're into the inquiry side of the determination. Again, a factual determination. You could be right. They could be right. But we don't appeal. This is a trial court thing. Why not allow for some discovery, come back, reappear magically on summary judgment. This is okay. Now the facts are here. Two answers. One, the Brumbaugh case talks about how inquiry notice is an objective legal standard that can be determined by the court as a matter of law. And in this case, because the facts necessary were there as part at the pleading stage, both through the pleadings that actually were made and Judge Bennett's taking judicial notice of all the information that was out there, I think that's a proper legal determination that he's even able to make at the 12B6 stage. Whether or not legislative versus adjudicative fact, different type of thing. So it's kind of where you other side was going with that was that judicial notice is permitted at 12B6, but it depends on the type of judicial notice you're taking here. And I agree completely. And it may be an argument here that this is not the type that should have been taken. And we address specifically why this was appropriate for them to take it. And look at what Judge Bennett actually took judicial notice of. He wasn't talking about the facts specific to these cases. He was talking about the information that's out in the public that's capable of being discovered. And when you're talking about whether or not this case is extraordinary circumstances or unique, he says it can't be. All this information was out there. But the creation of shell companies to funnel the kickbacks is certainly an extraordinary circumstance as pleaded, isn't it? In other words, the money was being funneled illegally through these shell corporations. And we had no way of knowing that. We see a good faith estimate statement that says what money changed hands as a result of this transaction. But there were these corporations that we had no knowledge of. Why isn't that an extraordinary circumstance? And I think the difference, Your Honor, goes towards why Fangman was decided the way it was, where there was equitable tolling, and why this case can't be decided in the same way. Because in Fangman, if you ask the question, well, what was out there? What could have been discovered? I think Judge Bennett says the answer was there wasn't much. There wasn't something that a reasonable borrower looking out there could find and say their loan may have been a problem. Now fast forward that three, four years later, it's a very different situation because you've got all this information out in the public that says there's a problem potentially with your loan and therefore you can't have, there's nothing concealed at that point. It was all out in the open. It seems to me, though, that what your argument is almost blending the inquiry notice and the extraordinary circumstances so that it's effectively one requirement. No, Your Honor, and I don't mean to do that because it's very clearly two different requirements. Extraordinary circumstances talks about what's outside the plaintiff's control. Right. While inquiry notice talks about what's inside the plaintiff's control. Right, and that's why I'm asking you about the Shell corporations. That's outside their control and totally outside their ability to know. But all of that information was out in the public very prominently since no later than the beginning of 2015, long before the second series of cases was filed. And so I think there's a difference there. I'm sorry, Judge Sherry. No, I'm sorry, because I really am wrestling with all of the same stuff, too. So is the right way to think about what Judge Bennett held, that there was fraudulent concealment, but it stopped? Like fraudulent, it stopped being effective at least. Maybe they didn't, it wasn't because they stopped trying. But for whatever reason, the period during which there was kind of fraudulent concealment for purposes of equitable tolling had come to an end by mid-2015. I think that's right. And I think that's what Judge Bennett actually specifically says in the opinion. He assumed without deciding that there was fraudulent concealment. He said, I don't even have to go there because under the extraordinary circumstances test, they still don't meet it. I'm going to assume that there was fraudulent concealment. But as of the first few months of 2015, you can't possibly say anything was fraudulently concealed anymore because everything was out in the open. OK. Which would mean that if that's right, the clock started running in 2015? Yes, Your Honor. OK. Yes, Your Honor. So and the issue is that this series of cases didn't get filed until December 2016 and then a number of different times throughout 2017. Long past a year from when all of this information was out in the open. And clearly discoverable by the plaintiffs. OK. So I think for these reasons, Your Honor, that's why we believe the district court should be affirmed. OK. Thank you. Mr. Schmalzbeck. Thank you, Your Honor. Brian Schmalzbeck for Bank of America. Very briefly in my five minutes, I'd like to address this extraordinary circumstances reason. And Judge Harris, if I could paraphrase you, the reason that extraordinary circumstances no longer existed starting in at least 2015 is that there was no longer any fraudulent concealment. Anything that, assuming for the sake of argument, had been concealed in the past was no longer consumed. And I'd like to specifically address that point as to Bank of America. Because the extraordinary circumstances did not prevent the filing of an earlier rest of the claim as to Bank of America because Bank of America was actually named as a defendant in the Fangman case. So it was no longer being concealed because you had a lawsuit? Yes, Your Honor. Not just a lawsuit. Not just a lawsuit about genuine title, but a lawsuit that actually named Bank of America as a co-defendant with genuine title. And then Bank of America was dismissed. Yes, Your Honor. Bank of America was dismissed. But it's important to actually look at the allegations in Fangman. You weren't showing that there was something being done remiss with Bank of America. If they're dismissed early in the suit, was it not? They were dismissed after the first amended complaint was filed. And then after, I'm sorry, they were not dismissed until after the second amended complaint was filed in Fangman. So nothing in that lawsuit made any connection with genuine title and Bank of America to show that they had done anything wrong. If anything, you probably would, you were looking at it as an ordinary person, you'd say, well, they must have done nothing wrong. Because you surely would want to go after Bank of America if you were filing a lawsuit as a plaintiff, wouldn't you? Well, Your Honor, to be clear, they did go after Bank of America. That's right. The Fangman complaints... But if they're dismissed, that tells you there's got to be something big wrong because that's a deep pocket. You definitely want to go there. No, Your Honor. And here's why. So if you look at page 1151 of the joint appendix, you'll see the specific Bank of America allegations in the Fangman first amended complaint. And there are two paragraphs on that page that address Erica Parker, who was the supposed Bank of America employee who was involved in the genuine title issues. Those are the only two paragraphs that address Erica Parker. The rest of that page, what you'll see is that Bank of America was alleged to have multiple mortgage brokers who were involved in this scheme. And what you also will not see on that page is anything saying that the two named plaintiffs who were Bank of America borrowers or alleged to be Bank of America borrowers had only Erica Parker as their mortgage broker. So the complaint in Fangman is not limited to just Erica Parker. The complaint in Fangman is far broader. It says Bank of America is involved in the scheme, has multiple mortgage brokers involved in this scheme. And you're correct that when Bank of America pointed out that Erica Parker did not work for Bank of America during that time, they were dismissed. But that dismissal didn't- When we look at the whole purpose of equitable total, typically, as Judge Keenan pointed out, the Unstatuted Limitation Congress says, OK, boom, one year. But here, when you have fraudulent concealment, the problem is you benefit with the statute of limitation by your wrongful conduct. And if you are fraudulently concealing it, how are the people to know? So now we have Bank of America in a situation where they've been named in a suit, they're now dismissed. What indicates to anybody that there is something they ought to make an inquiry to a party that's been dismissed? Well, your honor, to be clear, Bank of America had been named in Fangman for a long period of time. They were first named on January 2nd, 2015. And so for nearly a year, they were out there as a defendant in the Fangman case. You mean the pleadings in a courtroom puts them out there? Was it in the newspapers? And did they report Bank of America being sued all of the major papers to everybody so they all knew Bank of America? Or was it stuff that's filed in court every day? And who knows it's filed? And when it gets dismissed in this fashion, who would know this other than the lawyers and the people in the courtroom? Well, you have access to PACER or something like that, and you know that's about out there. Right. I think it's important to distinguish, again, between actual notice and for purposes of 12b-6, we certainly give deference to the plaintiff's assertion that we were not actually on notice. But that's right. We're not dealing with that. We're dealing with inquiry notice. But you don't have enough here. You only got just somebody files an action in a court, names Bank of America. How do you know it? There's no newspaper articles on that, no television report. Bank of America got sued today, and it's all over the paper. And you proceed on for a year to do what lawyers do, and that is discovery and take a long period of time. And judges take a long period of time until you get to the court. And then boom, they're gone. What gives you the incentive to make an inquiry? I see that my time is up. May I answer your question? So I think it's very helpful to look at the cases from the Second Circuit, which are cited on page 49 of the joint appellees brief. They will be persuasive to us, I take it. They will be extremely persuasive to you. We won't be bound, but I'm not willing. We won't be bound, but you will be persuaded, I am confident. Because they explain why even absent actual notice, which we're not dealing with here, even absent actual notice. Tell me about these cases. Are these security cases or antitrust cases you're talking about in the Second Circuit? Or are they... Both securities and antitrust cases. Isn't that different? We're talking securities and antitrust cases. Multiple cases. That's a whole lot different than what we're talking here on real estate type things. You've got stock or somewhere, and you know something is going on. You better make some inquiries. Your Honor, the point is that actual notice was not required in those cases. The Second Circuit... I agree. But the inquiry aspect of it is what we're dealing with here. And the Second Circuit held that the filing of a similar class action puts that class on notice of the need to be aware of their claims. What about inquiries or antitrust type cases? There's nothing in those cases that limits them to securities or antitrust cases. But that's what they're about. They're about inquiry notice. But they're about that subject matter, right? Yes, they occur in that subject matter. That's right, Your Honor. That's what I want. Okay. Thank you, Your Honor. Thank you. Roberto, please. Thank you, Your Honor. I just want to pick up on the observation made by Judge Wynn, because I think it's very significant. You have to take into context the context. The context is very important. This is not a securities investor who knows that his stock price went down and is wondering why. And it's not a business that was put out of business by Microsoft because of some collusion that you suspect. These are people who closed on a real estate loan and have no idea that somebody paid a kickback to somebody else in connection with that transaction. And there's no reason why they should know it. The only relevance to that is whether, in either event, you have an opportunity to advance to a 12 or 16, as opposed to some judgment. And so what you just identified, there may be instances. I don't think we need to get into saying securities are treated differently. It's an analysis of whether 12 or 16 is appropriate. And if there's enough here to say this particular type thing does do it, then you can do it there. And we don't limit ourselves to whether or not the stocks or antitrust or dealing with a real estate transaction. We just deal with it. Are the facts sufficient or are the facts established to the conclusion ready to do it for 12 or 16? I agree with you. But we're talking about inquiry notice, and you have to ask yourself, what is it that happened that would cause the homeowner to inquire, did I have something fraudulent occur in connection with my loan? I'll look at my settlement statement and see if I see anything. And they won't see a thing because the kickback is not disclosed on the HUD-1. But is that an argument that there was an inquiry notice or that it doesn't matter because even if they were on inquiry notice, they wouldn't have found anything? It's that we're not on inquiry notice. There's nothing that occurred out there in the ether with these news reports about Wells Fargo that would cause Joe Homeowner, who got his loan from First Mariner Bank, to think, I better start looking at something. I better figure out what happened to me because he doesn't know he's been injured. He has no notice that something wrong happened. And you asked me earlier, Your Honor, about the complaint. If you look at paragraphs 80 to 81 of the Bank of America complaint, just as an example, it's on JA 183 and 184, the plaintiff specifically alleged that there was no disclosure made to them and as a result, they did not have and could not have had any knowledge of the kickbacks during or after the settlement or that a portion of their payments to genuine title were illegally split with the lender through illegal kickbacks paid to the broker that they dealt with at Bank of America. There's just no way they would know and that's what they alleged and that has to be accepted. That's our position. Thank you. All right, sir. Thank you. We'll come down and greet counsel and then we'll proceed to hear the last case.
judges: Barbara Milano Keenan, James A. Wynn Jr., Pamela A. Harris